Good afternoon, your honors. My name is Tony Gallagher. I'm the Federal Defender for the District of Montana, and I'm here representing Defendant Harold Patrick Mitchell. As an aside, I've represented Pat for about seven years in about five or six different proceedings. So he would be like the Timpson clan or Leo McCurran. Judge, I at one time almost felt like I should invite Pat home. I had some helpful families like that in Fairbanks. Well, your honor, unfortunately, Pat doesn't pay my salary. As I said, I'm the Federal Defender for the District of Montana. So at any rate, I would like a good lawyer in any event. Counsel, help me with something. It looked to me like K2B and Comment 11 used this phrase, confinement resulting from such sentence. And this fellow's confinement results from the sentence. So it seems like that leads ineluctably to counting from when he finally gets out. And that's the end of the case. What am I missing there? Well, your honor, I think what you're missing there is we have to look to that section of the guidelines which talks about revocations. And that particular section Walk me through. I keep trying to read it to see the problem, and I keep thinking, gee, I don't see the problem. Well, your honors, here's the problem. I got them right here. All right. We're talking about 4A1.2K. I'm looking at K. And K1 says in the case of prior revocation of probation, then there's a list of other things, add the original term of imprisonment to any term of imprisonment imposed upon revocation. Okay. Resulting total is zero. So he has zero plus his subsequent term. Right. No problem. Now, for the purposes of determining the applicable time period, use the following. One, in the case of an adult term of imprisonment totaling more than one year, and one month, the date of last release from incarceration on such sentence. That clearly doesn't apply to Pat because this is a juvenile disposition. Right. So now we have to focus on double I and triple I, or two and three. In the case of any other confinement sentence for an offense committed prior to the defendant's 18th birthday, the date the defendant's last release from confinement on such sentence. Right. Pat did not receive a confinement sentence. He received a period of probation. I think that's where I keep losing it. Because it seems to me that it ultimately turned out to be a confinement sentence. It was a sentence, I'm not going to confine you now, but if you misbehave, I'm going to confine you. Well, and that, in fact, is hypothetically what the judge said. I'm not going to confine you now, but if you violate, then I'm going to either modify or put you in jail. And what happened? And he did and he did. He did. But, and I do apologize. In my introductory statement, I did want to apologize to the court for not sending in a 28J letter. And the court asked us to consider Ramirez. And as I was considering Ramirez, another case came to my attention this weekend, as a matter of fact. And that was Mendoza-Morales, which is at 347 Fed Third 772. This court's case number is 02-10659. That case was decided October 21, 2003. Very briefly, the facts of Mendoza-Morales were that Mr. Morales was sentenced to a total of 434 days as a condition of probation for a 1994 California case. And 365 days incarceration as a condition of probation in a 1998 conviction. Now, that decision undercuts the government's argument in its reply brief, that it was an obvious misstatement for the sentencing commission to put probation in that laundry list that I had read to the court in my introduction. And in response to Judge Kleinfeld's question. Mr. Gallagher, is that because of the differences in California law with regard to juvenile offenders? Oh, absolutely. Because I know they have this incredibly intricate statutory scheme. I guess my question for you as a Montana lawyer is, under Montana's juvenile proceedings, when your client was violated, did the Montana district court judge enter some sort of a, what we would, I guess, call a judgment and commitment order, which normally follows the revocation of probation in an adult federal offender and remand him to the custody of the marshal or the Bureau of Prisons for confinement as a result of the violation of the conditions of probation? Was there anything like that in the Montana proceedings? There are things like that in the Montana proceedings. Whether or not that is what happened to Pat, I can't answer for the Court, because that is not developed in the record. Okay. So if we need to go that road, then we're going to have to remand and ask Judge Haddon and the probation officer to go out and dig up some more information as to what happened in juvenile court proceedings. That's correct, Your Honor. Okay. But what about this concern, then? We've got nine States and at least two territorial possessions in the Ninth Circuit, each of which I'm assuming has slightly different proceedings involving the treatment of juvenile offenders. Aren't we better off following the approach that Judge Kleinfeld suggested? And that is, regardless of how it's categorized, if a juvenile offender is ordered confined, isn't that sufficient for the language that we were reading out of the sentencing guidelines? Well, in one respect, I would have to agree with Judge Kleinfeld that that's correct. But in the other respect, we are bound by the rather confusing language that we have to deal with in this particular chapter of the United States Sentencing Guidelines. And we've got the language in Ramirez that looks specifically to the California youth provisions in finding that, well, you can be ordered confined, but it doesn't necessarily have to result in a, quote, unquote, confinement for violation. It can mean we're going to put you in the county jail for the county youth home or whatever for 30 days and let you, you know, take a timeout, I guess is what we'd call it. Right. And Ramirez deals with that temporary detention and how that should be viewed by a sentencing court sometime later, whether or not that's confinement or it's a modification or whatever it may be. And Ramirez, this Court determined that, no, no, that's not confinement. And so if we're concerned about developing law for the Ninth Circuit on this issue, should it turn on the vagaries of an individual state's juvenile criminal procedure? Or should we announce a uniform rule for the circuit that says, hey, confinement is confinement. And if your liberty has been significantly deprived for purposes of the sentencing guidelines. And clearly that's happened to Mr. Mitchell on at least three occasions as a result of the burglary of the post office. That is correct. That's good enough. Well, we get into an area that I don't know if I'm prepared to discuss today, nor to, as Carl and I, I mean, Mr. Rosted and I discussed before this argument today. What is confinement? I mean, is, in our instance in the State of Montana, if someone is sentenced to Swan River Youth Camp, is that confinement? You know, I have a lot of trouble getting into the details of a State system, as Judge Tallman does. And I'm wondering if you're not helped on this, this matter of interpretation by the official comments in the guidelines at the beginning of the chapter that we're discussing. In 4A1.1, comment or application note, rather, application note 2, it says, a juvenile sentence imposed for an offense committed prior to the 18th birthday is counted, quote, only if confinement resulting from such sentence extended into the five-year period preceding the defendant's commencement of the instant offense, close quote. And it seems to me that's the language that I thought kind of obviated the problem here. As for what's confinement, if they tell you you can't go and you're subject to being prosecuted if you leave, that sure is good enough for me. I mean, could we say that there's no Fourth Amendment issue and you could confine a person in the youth camp without probable cause and without a warrant and without any process because he hasn't lost his liberty? I don't think so. I don't think so, either. But certainly, and I have no time left. Go ahead and respond, though. I've raised this concern about the application note, and I want you to be able to respond to it. As far as the confinement is concerned, I don't think that that's really an issue as far as Pat. Because Pat did go to Pine Hills, and Pine Hills is, in essence, a youth prison. I mean, he can't leave Pine Hills. And there's no doubt that Pat was revoked, and there's also no doubt that he couldn't leave. So as far as that portion of this, of our discussion, Pat was revoked, Pat got put in prison. But the difference here is, and this why would they have sub 3 if there wasn't a circumstance where someone who was sentenced to probation, as Pat was, wouldn't come under the provisions of this particular guideline if he was revoked. And that is that you relate back to the date of the original sentence. I would also point out in Ramirez to me like, gee, there may be something we haven't thought of. Well. It's just a catch-all. It is a catch-all. In the other case. And this is the case. Mr. Rosby is. Only if we can get it out of 2. You can't get it out of 2, Your Honor. Could we get it out of 2 if we remanded it, and the government and the probation officer came up with the relevant Montana juvenile court records, and they showed that the Montana juvenile court judge found a violation of the terms of probation and formally revoked probation and ordered him incarcerated at Pine Hills for a sentence of 60 days based on his conduct. No. That would not fall within the little. You could not get there. And the reason you can't get there, I relate again to Ramirez. And that is their discussion in Ramirez that when someone is sentenced, when someone is convicted, they must have the full panoply of constitutional rights. But let's assume that that's all shown. In other words, that – I mean, I'm assuming in a juvenile court proceeding that he has the right to counsel, that he's given the same kinds of admonitions that we give adult offenders. Absolutely. In the first instance. Okay. But when you're revoked, you don't have those. Now we're talking about a different burden of proof because we're revoking a probation and we're revoking a parole. So he doesn't have a right to counsel? He has the right to counsel, but he does not have the full panoply of constitutional rights which would equal a conviction. And Ramirez discusses that. If the Court please, just a moment. But it doesn't say that, does it? It says in the case of any other confinement sentence. Confinement sentence. That doesn't say conviction. We're focusing on the punishment. But when – Your Honors, when someone is violated on their probation, and all of you, we're either prosecutors, defense attorneys, or both, you know that that revocation isn't something that arises from the hit. It goes – it relates back to the original conviction. That's why there's a violation of probation. Yes, Your Honor. When I analyze it in terms of the common sense of it, what they could be trying to accomplish with this language, it looks to me as though what they're trying to accomplish is, does he behave? Has he behaved for a long enough time so that we can ignore his old misbehavior? And we're not going to count good behavior when he hasn't been convicted of anything if he's in jail, because his opportunities to commit crimes are so severely restricted when he's in jail. And certainly, though, you have to be at a jail in order to get credit for behaving yourself. And, Your Honor, I agree that that's one way to look at it. But another way to look at it with respect to why this particular subdivision is there and with respect to why this conviction, this disposition doesn't count is that it's not – that it's lost forever. And, again, I rely on Ramirez, which this Court asked us to consider, and that is that if this particular juvenile adjudication doesn't count, even despite all the revocations, the government still has the option to come back to the Court under 4A1.3 and say, Judge, because this adjudication doesn't count, because it comes under 4A sub 3, then you can move for an upward departure because of inadequacy of criminal history. And there, Your Honor, Judge Kleinfeld, is the answer to your question is, his misbehavior is yet again going to be punished, but not specifically under the guidelines of the section which relates back to his conviction, rather because of the inadequacy of his criminal history. I see that my time is – Well, it's an important case, and I hope my fellow panel members will indulge us a little. You've teed up an issue for us here that obviously is of significant concern in the circuit, given the fact that under the guidelines, we have to look at juvenile adjudications now as we never did before. Yes, Your Honor. I would agree with that. And very often in Montana, that is the case. Well, I'm still troubled by the fact – let's take one of the grounds for his revocation. He crashes a car into a building, I guess it was a casino, and steals 15 cases of beer. Yes, Your Honor. Okay. And that doesn't have anything to do with the burglary of the post office. No, Your Honor. And clearly, he was never prosecuted by Montana juvenile authorities separately for that particular offense. Actually, it would be a host of offenses that I'm thinking of. But instead, the most expeditious route was to simply refer him back to the juvenile court on which he was already serving a term of probation, bring this matter to the attention of the judge. And clearly, he was sent back to the school because of what he had done. Now, I agree he doesn't have the full panoply. He doesn't get a formal charging document. He doesn't get a jury trial or whatever he would be entitled to as a juvenile on that offense. But that is still a sentence of confinement based on his misbehavior while he was under the supervision of the juvenile court from the prior probationary sentence. But two points I'd like to make, and I'm way over time if I may be allowed to answer. Please do. One, when I was a prosecutor, I found it far more beneficial to me and my employer, the State, to say I'm going to be able to take this guy in for a violation of probation rather than go through the expense of having him prosecuted again for this new offense. I can get the same result by getting the violation of probation and my burden of proof is a lot less. Secondly, that sentence of confinement relates back to his original offense. And that is made clear not only in the case law, which talks about what probation is and what a violation of probation is, but it also is clear, at least to me, and apparently I am the only one, that it goes back to that original adjudication when the State district judge imposed that period of probation. And I do wish the Court to take a look at Mendoza, Mendoza Morales, because in that particular case, it obviates, it cuts, it undercuts the government's argument that the probation in that laundry list is inappropriate because there we're talking about a period of incarceration that was part of the probationary term. That's where 2 would come in. 3 comes in in Pat Mitchell's case. Thank you, Your Honor. Thank you, counsel. Good afternoon, Your Honors. May it please the Court. I'm Carl Rostet with the U.S. Attorney's Office out of Montana. Your Honors, I'm really not smart enough to figure out all of these guidelines. What I know Mr. Gallagher is telling you, however, is that if the court on the juvenile case back in 1993 did not sentence the defendant to a period of incarceration at that time, his theory is that you can never use that, regardless of whether he was revoked a week later.  He's saying it wasn't a confinement sentence. Everybody that doesn't get prison time the first time they're in the court system is olly olly ox. So why is it a confinement sentence? Well, he did see an out, though, Mr. Rostad. His out is you might not be able to tag him under that one, but then you just say to Judge Haddon, hey, this criminal history is set forth in the PSR as inadequately represented, and we ask for an upward departure in order to take a look at what's really going on here with this guy who can't stay out of trouble. Oh, and I agree with that, Your Honor. I certainly think there's a way around what's going on. You don't get to the same result. You just exactly do it through this book. And the question is, in your interpretation as the appellate court of the Guidelines, do you feel comfortable coming to the conclusion that Mr. Gallagher's interpretation of the Guideline is that is black-letter law, that if you never got any incarceration at the first time you came into the system as a juvenile, then you can never be, have any points included, regardless of how many times you're revoked. What do we do with Ramirez? That certainly seems to support his argument. Well, I don't see Ramirez as addressing Mr. Gallagher's. I see those as two fairly separate things. There may be a question in this record whether revocation was appropriate because we did not sufficiently document the intervening revocations in terms of whether the district court did it or whether there was a finding of guilt, as that term applies to revocations. So the record may not be sufficient to satisfy Ramirez, but that doesn't answer Mr. Gallagher's question. Because if we went back and satisfied Ramirez, Mr. Gallagher would be in the position that since the first time that Mr. Mitchell came into the criminal justice system, he did not get sentenced to incarceration. We can never apply two points for that, regardless of what happened in the intervening years as he was a juvenile. I think, Your Honor, that that's the seminal question for you gentlemen to answer. And so unless you have any other questions. Is there anything else that defines what a confinement sentence is? I don't believe so, Your Honor. I quite frankly am persuaded, although I know that the majority didn't come to the same conclusion by Judge Hall's dissent in Ramirez, that I think that to avoid having district, Federal district judges second-guess whether there's a revocation in a particular instance because it's not a serious enough crime or whether you're dealing with what the scheme in California is versus Nevada, that her definition, which was, is there a violation? Was there a revocation? If you answer that question. That's basically a non-starter argument because we can't follow her dissent. I know that, Your Honor. If you want us to rule in your client's favor here for the U.S. of A., you can give us an argument to limit Ramirez or an argument that we shouldn't extend Ramirez or an argument that Ramirez doesn't apply. But you can't ask us to follow Judge Hall's dissent in Ramirez. No, Your Honor. And I wouldn't. I wasn't asking that. I was merely observing. I think it did. How do you restrict? Does the government confess error in light of Ramirez or does the government say Ramirez doesn't apply to this case? No, I think Ramirez applies to the case because it's the law of this circuit. And to the extent that the record is not developed. Pardon me? I can think of all kinds of cases that are law of this circuit and do not apply to this case. Right. Could you speak more plainly to whether Ramirez applies to this case? In my view, Ramirez does apply to this case because Ramirez speaks to the issue of what you have to have to use the guidelines on revocations. You have to show that there was a revocation and then you have to show that there was imprisonment imposed as a penalty based on that not temporary detention or some other schematic. There has to be a finding. And I don't think that the pre-sentence report in this case indicates that we went back to the state, went back to the district court, that the district court found the violation and then imposed the – I mean, certainly that's what the facts suggest and I have no doubt that that's what we're going to determine when we go back down. But I don't see that Ramirez is inapplicable to this case. So are you then conceding that we should remand in the light of Ramirez for that factual determination? I think so, Your Honor. But I still believe that that doesn't answer Mr. Gallagher and his client's issue because I think we could go down and satisfy Ramirez without reaching the issue of whether a juvenile similarly situated or situated exactly as Mr. Mitchell is can ever be found to have those two points approved regardless of the revocation proceedings that come afterwards. Because his – his argument is, is that unless it was imposed the very first time that there was incarceration in the, quote, unquote, original sentence, it doesn't matter what the revocations were. And if that's the case, if the court were to adopt Mr. Gallagher's view of the interpretation of the guidelines, then Ramirez has no application because it doesn't matter how many revocations there were. He still shouldn't have gotten the two points because he did not get time when he was first brought into the system. So you're saying that if Ramirez were satisfied, then the detention after a revocation would be okay? Yes, Your Honor. We interpret the guidelines. Do you want us to remand for a determination whether Ramirez was satisfied? Your Honor, I looked at page 11 of the present report, which discusses the various revocations, and I don't think that the information contained therein is sufficient to satisfy Ramirez as far as the record made about whether there was a revocation or whether there was maybe a finding that it's just a modification and you're back to Pine Hills, whatever the – Is that the kind of thing that requires an evidentiary hearing? I mean, is that the kind of thing where you and Mr. Gallagher would sit down and give the judge a stipulation about what happened? I don't know if I can get Mr. Gallagher to stipulate, Your Honor, but certainly I think that that's the factual deficit that's here. But you're saying it doesn't make any difference because his argument goes beyond that. Yes, Your Honor. He's saying even if we can show that there was a formal revocation, it still relates back to the original sentence, and therefore it can never be under little two. Exactly. So maybe what we should do is, if we're going to agree with you on Ramirez, we should reach the legal question. We would encourage that, Your Honor, because I think that that is – that I think Mr. Gallagher would agree that we could go down and satisfy Ramirez and he'd still come up on the same issue, that is, whether even the revocation's being solid with due process and all that Ramirez requires, still not enough because he didn't get time originally. Well, if we're going to remand it to the district court, we're going to have to tell Judge Haddon what he does. Certainly. So if he finds that this was a formal revocation from the original sentence of probation My view, Your Honor, is that you have three choices. You can side with Mr. Gallagher and interpret it and then reverse the case and remand it for resentencing, saying you can't count those two points because you adopt his analysis that there was no incarceration at the very beginning of his entry into the criminal justice system. Or you can answer the question in favor of the government's interpretation, Judge Haddon's interpretation, which is, no, that's not the way it is. As long as there were revocations and his last release from imprisonment was within five years of the current conduct, that can be included. But Ramirez requires that there be more of a due process inquiry as to the validity of the revocations in the first place that are apparent from the pre-sentence report. And I said there was a third one, and I'm not sure what the third one was. But those seem like the two because I don't – I suppose if you are satisfied, Your Honors, that The third one would be if you distinguish Ramirez in some way. Yeah. And I don't He's not inclined to argue. Your Honor, I don't have – there might be a distinguishment there that I don't see, but I – this, like Mr. Gallagher said twice before the Court when he was arguing this at sentencing, he considers that this area of the law is a sort of a morass on the juvenile prior criminal history, and I don't disagree with him there. So when you guys were kicking this around on the airplane or in the waiting area, you didn't come up with any better solution to the problem? I'm sorry, Your Honor. And what you want us to do is say it was a confinement sentence because he wound up doing time on it, but we don't know if there's a valid revocation, so we're remanding for a determination pursuant to Ramirez. Unless the Court looks at the pre-sentence report and determines that the factual record is there, I think you have to send it back down to the district court for inquiry into those limited issues. Presumably you know the record a lot better than we do, and you don't think that our looking is going to pay off. I don't, Your Honor, but I also think you know Ramirez probably better than I do. I mean, I've looked at Ramirez a couple of times, and I – as I read through it, I find things that are nuanced in there more than once. I will leave that to Your Honors. Thank you. Thank you, Counsel. We went way over time, so United States v. Mitchell is submitted. Thank you, Counsel. Thank you both. That was very helpful. Have a good trip back. We'll see you tomorrow. Oh, tomorrow. Okay. We'll see you in the morning. We'll see you tomorrow. Good. I'm glad we're saving a little taxpayer money. And next is Galvin v. Alaska Department of Corrections.
judges: Kleinfeld, Gould, Tallman